**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGE HUMPHRYS, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TD AMERITRADE HOLDING CORPORATION and TD AMERITRADE, INC. F/K/A TD WATERHOUSE INVESTOR SERVICES, INC.,<br><br>　　　　Defendants. | Civil Action No. 08-CV-02912 |

**MEMORANDUM OF LAW IN SUPPORT OF THE SILVERSTEIN GROUP'S MOTION FOR (1) APPOINTMENT AS LEAD PLAINTIFF AND (2) APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

1

**TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................ 5

Statement of Facts ............................................................................................................. 6

Argument ........................................................................................................................... 8

    A. The Silverstein Group Satisfies the Procedural
        Requirements of the PSLRA ................................................................................ 8

    B. The Silverstein Group Has Complied with the Requirements of
        the PSLRA and has the Largest Financial Interest in the Relief
        Sought by the Class ............................................................................................... 8

           1. The Silverstein Group Satisfies the Requirements
              of Fed. R. Civ. P. 23 ................................................................................. 9

           2. The Silverstein Group's Claims are Typical ....................................... 10

           3. The Silverstein Group Will Fairly and Adequately
              Represent the Interests of the Class ....................................................... 12

    C. The Court Should Approve the Silverstein Group's Selection
        of Lead Counsel ................................................................................................... 13

Conclusion ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Gluck v. CellStar Corp.*
  976 F. Supp. 542, 546 (N.D. Tex., 1997) ........................................................................ 10

*Johsnson v. Pozen Inc.*,
  2008 WL 474334, *2 (M.D.N.C. 2008) .......................................................................... 11

*In re Bank of Boston Corp. Sec. Litig.*,
  762 F. Supp. 1525, 1532 (D. Mass. 1991) ...................................................................... 10

*In re Cendant Corp. Litig.*,
  264 F.3d201, 276 (C.A.3 NJ, 2001) ................................................................................ 13

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285, 291 (2d Cir. 1992) ............................................................................. 10, 12

*In re Lernout & Hauspie Sec. Litig.*,
  138 F. Supp. 2d 39, 46 (D. Mass. 2001) ......................................................................... 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
  172 F.R.D. 119, 126 (S.D.N.Y 1997) ..................................................................  10, 11, 12

*In re NASDAQ Market-Makers*,
  169 FRD 493, 512 (S.D.N.Y. 1996) ............................................................................... 12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42, 50 (S.D.N.Y. 1998) ................................................................................. 12

*Lernout & Hauspie*,
  138 F. Supp. 2d 39, 46 (D. Mass., 2001) ..................................................................... 9, 10

*Robidoux v. Celani*,
  987 F.2d 931, 936-37 (2d Cir. 1993) .............................................................................. 10

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(i) .............................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...................................................................................... 13

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). .................................................................................. 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) .................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................. 13

15 U.S.C. §78u-4(a)(3)(A)(i)(II) ............................................................................................ 8

§21D(a)(3)(B) of the Securities Exchange Act of 1934 ............................................... 5, 14

Fed. R. Civ. P. 23 ............................................................................................................ 9, 10

Fed. R. Civ. P. 23(a) ....................................................................................................... 9, 10

Fed. R. Civ. P. 23(a)(3). ...................................................................................................... 10

Sheldon Silverstein and Stephen Stock (collectively referred to as the "Silverstein Group") respectfully submit this Memorandum of Law in support of their motion to: (1) appoint the Silverstein Group as lead plaintiff pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) approve their selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as lead counsel.

## PRELIMINARY STATEMENT

Presently pending in this District is a class action lawsuit brought on behalf of investors who purchased auction-rate securities ("ARS") from TD Ameritrade, Inc.[1] ("TD Ameritrade" or "Defendants") between March 19, 2003 and February 13, 2008 (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 thereunder. In addition a parallel class action lawsuit is pending before the United States District Court for the District of Nebraska styled *Silverstein v. TD Ameritrade Holding Corp., et al* Case No. 08-cv-00175 filed by the undersigned (the "Nebraska Action").[2]

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The Silverstein Group believes that it is the "most adequate plaintiff" under the PSLRA to serve as the lead plaintiff on behalf of all investors that purchased ARS from TD Ameritrade and who were harmed by Defendants' misconduct. As discussed below, the Silverstein Group believes that it has

---

[1] TD Ameritrade, Inc. f/k/a TD Waterhouse Investment Services, Inc. is s a subsidiary TD Ameritrade Holding Corporation. These entities are all named as defendants in this lawsuit.

[2] The Silverstein Group has filed a motion for lead plaintiff and lead counsel in the Nebraska Action as well. It is anticipated that the two cases will eventually be consolidated in one forum, however, because the PSLRA requires that the lead plaintiff motions be filed by May 19, 2008, the Silverstein Group has filed its lead plaintiff motion in both jurisdictions to preserve its interest in both forums.

5

the largest financial interest of any adequate movant in the relief sought in this action. Specifically, the Silverstein Group purchased $425,000.00 of ARS that are now illiquid and, based largely on Defendants' own valuation, the Silverstein Group has suffered losses of approximately $425,000.00 from its investments in ARS during the Class Period.

The Silverstein Group also satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as its claims are typical of the other members of the proposed Class and it will fairly and adequately represent the Class. The members of the Silverstein Group purchased a variety of ARS issues sold by Defendants and are therefore well-positioned to represent the members of the Class.

The Silverstein Group also seeks to have its counsel, Levi & Korsinsky appointed as lead counsel. Levi & Korsinsky has extensive experience and a track record of success in handling securities fraud litigation, including class actions, and therefore should be designated as lead counsel.

**STATEMENT OF FACTS**

ARS are municipal bonds, corporate bonds, and preferred stocks with interest rates or dividend yields that are periodically re-set through auctions, typically every 7, 14, 28, or 35 days. ARS are issued with long-term maturities or even in perpetuity. In the case of auction rate preferred securities typically issued by closed-end funds in order to provide the funds' leverage, there is no maturity date and some are paying interest rates of just above 3.00%. However, due to an interest rate or dividend yield re-set feature, ARS have been marketed as short-term instruments. ARS, however, bear no resemblance to any cash management vehicles and, in fact, federal regulations prohibit money market

funds from investing in ARS.

Defendants deceptively marketed ARS as cash alternatives to money market funds for investors needing liquidity and utterly failed to disclose material information about the ARS they were marketing.

Defendants uniformly failed to disclose that ARS are not cash alternatives to money market funds but are instead complicated financial products based on bonds having maturities of 30 years and longer.  Defendants also failed to disclose that ARS were only "liquid" because certain broker-dealers created an artificial market for ARS which would dry up as soon as these broker-dealers decided to remove themselves from the auction process.  Defendants also failed to disclose that but for intervention by these broker-dealers a great deal of these auctions would have failed during the Class Period.

Instead of disclosing the true nature of ARS and the substantial liquidity risks associated with them, Defendants continued to push as many ARS as possible on to their customers.

On or about February 13, 2008, Defendants and other broker-dealers simply stopped participating in ARS auctions and walked away entirely.  As a result, thousands of investors who thought they were holding highly liquid investments purchased from the Defendants are now saddled with long term securities they cannot sell.

Investors have no prospect of ever selling their securities through the auction market which has now been exposed as manipulated and artificial.  Ironically, these ARS were sold as "cash equivalents."

Thus, Plaintiff and the other Class members have been harmed as a result of Defendants' deceptive conduct and misrepresentations because the ARS they purchased

from the Defendants are no longer liquid and are also now worth less due to their illiquidity.

## ARGUMENT

    A.    **The Silverstein Group Satisfies the Procedural Requirements of the PSLRA.**

The PSLRA requires a movant seeking lead plaintiff status to have either filed an initial complaint or timely moved for appointment as lead plaintiff within sixty days of an initial notice. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II). In this case, plaintiff published a notice on March 19, 2008 advising all Class members who are interested in moving for appointment as lead plaintiff to do so by May 19, 2008.[3] As the Silverstein Group filed a motion seeking lead plaintiff status by this date, its motion is timely and the Silverstein Group satisfies this procedural requirement of the PSLRA. *See id.*

    B.    **The Silverstein Group Has Complied With The Requirements Of The PSLRA and Has The Largest Financial Interest In The Relief Sought By The Class**

The members of the Silverstein Group have signed certifications attesting to their purchase of ARS from TD Ameritrade and authorizing this action to be maintained on their behalf and on behalf of a class of similarly situated individuals. These certifications contain the requisite statements and satisfies subsection (aa) of Section 78u-4(a)(3)(B)(iii)(I) of the PLSRA. A copy of the certifications are attached as Exhibit B to the Declaration of Joseph E. Levi submitted herewith.

During the Class Period, the Silverstein Group purchased $425,000.00 of ARS that are illiquid, and based largely on Defendants' own valuation, the Silverstein Group suffered losses of $425,000.00 as a result of the purchase of ARS from TD Ameritrade.

---

[3]     A copy of this notice is attached as Exhibit A to the Declaration of Joseph E. Levi.

Thus, the Silverstein Group is believed to possess the largest financial interest in the relief sought by the Class in these actions. Accordingly, the Silverstein Group satisfies Section 78u-4(a)(3)(B)(iii)(I)(bb) of the PSLRA and is presumptively the most adequate lead plaintiff to represent the Class and/or any subclasses in this action. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 1. The Silverstein Group Satisfies the Requirements of Fed. R. Civ. P. 23

Section 78u-4(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative. *See In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 46 (D. Mass. 2001)(recognizing that plaintiffs seeking appointment as lead plaintiff need only make preliminary showing that they satisfy Rule 23 typicality and adequacy requirements). Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead

plaintiff moves for class certification. *See Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997). A Court's determination with respect to typicality and adequacy is without prejudice to defendants' right to contest these issues later in the action. As set forth below, the Silverstein Group satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as lead plaintiff.

### 2.     The Silverstein Group Claims are Typical

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied when the prospective lead plaintiff's claims arise out of the same course of conduct and are based on the same legal theory of the other members of the class and/or subclass. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y 1997); *see also Lernout & Hauspie*, 138 F. Supp. 2d at 46 (typicality satisfied when a "named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class") (quoting *In re Bank of Boston Corp. Sec. Litig.,* 762 F. Supp. 1525, 1532 (D. Mass. 1991)).

Rule 23 does not require that the named plaintiffs be identically situated with all Class members. It is enough if their situations share a common issue of law or fact. See *In re NASDAQ Market-Makers*, 172 F.R.D. at 126. Also, at the lead plaintiff stage, the initial Rule 23 inquiry is confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy. *Johnson v. Pozen Inc.*, 2008 WL 474334 at *2 (M.D.N.C. 2008). The Silverstein Group unquestionably satisfies both requirements in this case.

Here, the Silverstein Group's claims are typical of the claims of other Class members. As detailed above, the complaints allege that the Defendants violated Sections 10(b) and 20(a) of the Exchange Act and related SEC regulations by publicly disseminating false and misleading statements during the Class Period. In this action, the questions of law and fact common to the members of the Class and which affect individual Class members include:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether TD Ameritrade issued false and misleading statements during the Class Period;

(c) whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(d) Whether TD Ameritrade breached its fiduciary duties and other obligations to its brokerage clients; and

(f) whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to the Silverstein Group, as well as to all members of the purported Class. Similar to all of the other members of the Class, the members of the Silverstein Group were sold ARS by TD Ameritrade as cash alternatives when in fact they are complicated long-term financial instruments. Thus, the claims of the Silverstein Group are based on the same course of conduct and legal theories of the other members of the Class. The typicality requirement is therefore satisfied in this case. *See In re*

*NASDAQ Market-Makers*, 172 F.R.D. at 126; *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291.

### 3. The Silverstein Group Will Fairly and Adequately Represent the Interests of the Class

The adequacy requirements of Rule 23(a)(4) depends both on an "absence of conflict and antagonistic interests between the proposed representatives and the class members, and [ ] that Plaintiffs' counsel is 'qualified, experienced and capable.'" *In re NASDAQ Market-Makers*, 169 F.R.D. 493, 512 (S.D.N.Y. 1996)(citations omitted); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998).

The Silverstein Group satisfies this test.  First, there is no conflict between members of the Silverstein Group and other class members – all investors are aligned in the common interest of recovering the maximum possible damages from the Defendants. Indeed, the substantial amount of illiquid ARS held by the Silverstein Group creates an incentive to maximize the recovery in this case.  Moreover, because the members of the Silverstein Group purchased a broad variety of ARS issues sold by Defendants, it is therefore well-positioned to represent the members of the Class. Second, the Silverstein Group has selected Levi & Korsinsky as lead counsel.

 Levi & Korsinsky has extensive experience in the area of securities litigation and have prosecuted many securities fraud class actions in the past.  A copy of the resume for Levi & Korsinsky is annexed to the Declaration of Joseph E. Levi as Exhibit C.

Accordingly, there can be no doubt that the Silverstein Group has amply demonstrated its ability to oversee this action and to act in the best interest of the class (and any subclass) to obtain the maximum recovery.  Based on these facts, the Silverstein

Group satisfies the requirements of Section 78u-4(a)(3)(B)(iii)(I) of the PSLRA and should be appointed lead plaintiff.

### C. The Court Should Approve the Silverstein Group's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d at 276 (holding that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").

Here, the Silverstein Group has selected Levi & Korsinsky as their lead counsel which is a skilled and experienced law firm in the areas of securities litigation. Further, counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously. Accordingly, the Court should approve the Silverstein Group's selection of Levi & Korsinsky as lead counsel for the Class.

## CONCLUSION

For all the above reasons, the Silverstein Group respectfully requests that the Court: (1) appoint the Silverstein Group as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act; (2) approve its selection of Levi & Korsinsky as lead counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated:  May 19, 2008                                         /s/ Joseph E. Levi
                                                                              _____
                                                                              **LEVI & KORSINSKY, LLP**
                                                                              Eduard Korsinsky (EK 8989)
                                                                              Joseph E. Levi (JL 0848)
                                                                              Juan E. Monteverde (JM 8169)
                                                                              39 Broadway, Suite 1601
                                                                              New York, NY 10006
                                                                              Phone:  (212) 363-7500
                                                                              Fax:     (212) 363-7171

                                                                              *Proposed Lead Counsel for Plaintiff*